# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JASON LAVEGLIA,** *Plaintiff* v. **TD BANK, N.A.,** *Defendant* | Case No. 2:19-cv-01917-JDW |

## MEMORANDUM

The latest discovery dispute in this case, and there have been many, centers on whether certain documents on TD Bank's privilege log are really privileged or whether the work-product doctrine protects them. The Court has conducted an *in camera* review of the three categories of documents at issue and concludes as follows:

- Staff Selection Worksheets ("SSWs") (Priv. Nos. 15-18, 21-23, 25-26, 29-38, 40, 42-45, 47-52, 55, 57, 60-64, 66-67, 73, and 78-79 are not privileged;

- ERE Target Operating Models (Priv. Nos. 1-2, 102, 115, and 128) are privileged, and TD Bank can maintain its redactions of these documents; and

- The majority of documents that TD Bank claims relate to its investigation of a complaint against Mr. LaVeglia (Priv Nos. 6, 10, 112, and 118) are not privileged or subject to work product protection, but one document (Priv. No. 11) contains three e-mails that can be redacted to protect the attorney-client privilege and work product protection.

The Court will also require TD Bank to amend its privilege log yet again in order to comply with Federal Rule of Civil Procedure 26.

## I. LEGAL STANDARDS

### A. Attorney Client Privilege

The attorney-client privilege protects communications from discovery when:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994).

The purpose behind the attorney-client privilege is "to encourage clients to make full disclosure of facts to counsel so that he may properly, competently, and ethically carry out his representation. The ultimate aim is to promote the proper administration of justice." *In re Chevron Corp.*, 633 F.3d 153, 164 (3d Cir. 2011) (internal quotations omitted). In all circumstances, however, the facts underlying any given communication remain discoverable. *See Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981) ("Protection of the privilege extends only to communications not to facts. The fact is one thing and a communication concerning that fact is entirely different." (quotation omitted)). Moreover, because the attorney-client privilege obstructs the truth-finding process, it is construed narrowly. *See Westinghouse Elec. Crop. v. Republic of Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991).

### B. Work Product

The work-product doctrine, set forth in Federal Rule of Civil Procedure 26(b)(3), "protects from discovery materials prepared or collected by an attorney in the course of preparation for possible litigation." *In re Grand Jury Subpoena*, 745 F.3d 681, 693 (3d Cir. 2014) (internal quotations omitted). The doctrine intends to preserve an attorney's ability to "assemble

information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

In the Third Circuit, there is a two-step inquiry for testing a work product claim. First, work product protection is only available when there is a "reasonable anticipation" of litigation; this requires a court to determine at what point in time litigation could reasonably have been anticipated. *State Farm Mut. Auto. Ins. Co. v. Sanders*, No. CV 12-3052, 2014 WL 12618078, at *5 (E.D. Pa. Mar. 27, 2014) (*citing Martin v. Ballv's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d. Cir. 1993)). Second, the subject documents must have been primarily prepared for the purposes of litigation; documents prepared in the ordinary course of business, even if useful in subsequent litigation, are not subject to work product protection. *Id*. at *6.

### C. Burden

The party asserting attorney-client privilege or work product protection bears the burden of showing that the privilege or protection apply. *In re Grand Jury Subpoena*, 745 F.3d 681, 693 (3d Cir. 2014); *In re Grand Jury Empaneled Feb. 14, 1978*, 603 F.2d 469, 474 (3d Cir.1979). Federal Rule 26(b) requires the party to meet this burden by, "describ[ing] the nature of the documents, communications, or tangible things not produced or disclosed—and to do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii); *see also State Farm Mut. Auto. Ins. Co. v. Sanders*, No. CV 12-3052, 2014 WL 12618078, at *7 (E.D. Pa. Mar. 27, 2014). TD Bank has repeatedly failed to provide the Court with a privilege log that comports with this instruction. Particularly, TD Bank has opted to invoke *both* work product protection and attorney-client privilege over *every single* document at issue in Mr. Laveglia's Motion. While the Court engages

in both analyses for each document in its *in camera* review, the Court is cognizant of TD Bank's continued indolence in preparing its privilege log and its persistent failure to abide by Federal Rule 26(b)(5).

Here, TD Bank's privilege log has been, and remains, problematic. TD Bank initially served a privilege log that did not provide any information to establish the foundation underlying a privilege claim. (ECF No. 36-1 at Ex. A.) Indeed, the original privilege log appears just to have captured the fields from TD Bank's document review software but provided no explanation as to the basis for any privilege assertion. At the Court's direction, TD Bank provided a more fulsome privilege log. (ECF No. 41-1 at Ex. A.) The amended log does provide additional narrative information to permit Plaintiff to assess TD Bank's privilege claims. However, the Court's *in camera* review of many of these documents reveals that TD Bank's log includes information only about the top e-mail in an e-mail string, even when that e-mail is not the basis for an assertion of privilege. As a result, the log often references communications between non-lawyers when the basis for an assertion of privilege is an e-mail further down on the page between different individuals. In this respect, TD Bank's approach to preparing the privilege log is still lacking in that it deprives Plaintiff of the information needed to assess the claim of privilege.

No doubt, the preparation of privilege logs is tedious, and electronic discovery is the bane of many a lawyer's existence. Nonetheless, as Daniel Webster said, "If he would be a great lawyer, he must first consent to become a great drudge." Preparation of privilege logs is the type of drudgery to which lawyers must pay careful attention if they want to call themselves "great."

## II. ANALYSIS

### A. SSWs

The SSWs are spreadsheets that provide information about employees whose roles TD Bank analyzed, which were given to TD Bank's in-house counsel for review before implementing various employment decisions. The information includes recent employee ratings, whether the employee has filed any employment-related complaints, the role for which the employee is being assessed and whether the employee has been selected, and a narrative explanation of the business decision. There is no legal information in the SSWs. Nonetheless, TD Bank argues that the SSWs are privileged because they were created for the purpose of providing counsel with necessary information to render legal advice.

TD Bank has not satisfied its burden of demonstrating that the SSWs are subject to the attorney-client privilege. While TD Bank could arguably withhold the SSWs that were transmitted to counsel, it cannot withhold every iteration of the SSW that its HR staff prepared merely because some version ultimately was sent to counsel. Instead, TD Bank must demonstrate that the SSW is, in itself, a communication with counsel. As TD Bank acknowledges on its privilege log, most of these SSWs were attached to non-privileged e-mails. That means that the particular version of the SSW is not a communication with counsel that might be subject to the privilege. Rather, it is a collection of facts, some version of which might ultimately have been transmitted to counsel.

In opposing the Motion, TD Bank cites *Craig v. Rite Aid Corp.* to support its argument that a document created and exchanged between HR employees can be privileged. That is true but irrelevant here. Indeed, the *Rite Aid* court found that an internal spreadsheet, prepared at the direction of in-house counsel, containing factual information regarding company managers, was neither privileged nor protected under the work product doctrine. *Craig v. Rite Aid Corp.*, No.

5

4:08-CV-2317, 2012 WL 426275, at *15 (M.D. Pa. Feb. 9, 2012), *on reconsideration in part*, No. 4:08-CV-2317, 2012 WL 1079472 (M.D. Pa. Mar. 30, 2012).

On its privilege log, TD Bank also asserts that the SSWs are protected by the work product doctrine. It makes no effort to defend that position in its opposition. Nor could it. The SSWs were not prepared in anticipation of litigation. They were prepared in the hopes of preventing litigation. Work product therefore does not apply, as TD Bank apparently concedes. Because the documents are not privileged, the Court need not address Plaintiff's waiver argument. TD Bank must produce the SSWs.

### B. ERE Target Operating Model

The documents described as the ERE Target Operating Model are, in fact, a series of e-mails in which non-lawyers discuss when to announce business and staffing decisions internally. TD Bank asserts attorney-client privilege over redacted portion. TD Bank does not indicate to the Court exactly what portion of the document was redacted, but the only possibility is a general reference to the legal department's ultimate position concerning the business decision in question. The Court concludes that this document reflects, at some level, counsel's advice concerning the plan in question. It is therefore privileged.

### C. Investigation Documents

In 2018, TD Bank's in-house counsel oversaw an internal investigation about a concern that TD Bank asserts implicated Mr. LaVeglia. TD Bank asserts privilege, but not work product, for Priv. Nos. 6, 10, and 11, and privilege and work product for Priv. Nos. 112 and 118. The attorney-client privilege encompasses factual investigations by counsel. *United States v. Davis*, 131 F.R.D. 391, 398 (S.D.N.Y. 1990). It also extends to "any factual statements made by the employee to the attorney pursuant to such an investigation are privileged." *Babych v. Psychiatric Sols., Inc.*, 271 F.R.D. 603, 610 (N.D. Ill. 2010).

Here, Priv. Nos. 6, 10, 112, and 118 do not implicate any communications with counsel. They merely reflect administrative matters like efforts by the investigator to schedule an interview. There is nothing privileged about these documents. The documents do not include legal advice that was given or even the facts that were collected for counsel. Work product also does not apply because there is no evidence that TD Bank anticipated litigation at the time of the investigation in question. Notably, TD Bank does not make any argument about work product in its opposition to the motion. Therefore, TD Bank must produce these documents.

Priv. No. 11 is a different story. That document includes an e-mail from TD Bank's Senior Counsel Dave Gollin relating his conversations with Mr. LaVeglia's counsel and discussing the prospect of litigation. Subsequently, two TD Bank employees—Suzy Michor and Kimberly Strignile—discuss Mr. Gollin's initial e-mail. These e-mails are subject both to the attorney-client privilege and the work product protection. Thus, TD Bank may redact the substantive communications from those e-mails. However, the rest of the e-mail string discusses administrative matters, and TD Bank must produce it.

The fight over Priv. No. 11 illustrates the problems with TD Bank's privilege log. If TD Bank had provided information about e-mails in an e-mail string, rather than just noting the top e-mail in its log, then Plaintiff would have been aware of Mr. Gollin's participation in this e-mail string. TD Bank's approach to the log led, inexorably, to a discovery fight that might have been avoided.

## **CONCLUSION**

For the foregoing reasons, the Court will order TD Bank to produce SSWs and the documents relating to the investigation of Mr. LaVeglia, subject to the noted redactions of Priv. No. 11. The Court will not order the production of the ERE Target Operating Model documents.

The Court will also require TD Bank to produce a second amended privilege log that complies fully with this opinion and with Rule 26(b)(5).

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

Dated: January 10, 2020